Gurley v. Armentraut.

## WILL CONTEST—PARTIES—EVIDENCE—ERROR.

[Wayne (5th) Circuit Court, September Term, 1905.]

Voorhees, Donahue and McCarty, JJ.

WILLIAM W. GURLEY ET AL. V. WADE ARMENTRAUT ET AL.

1. EXECUTOR OR ADMINISTRATOR NOT NECESSARY PARTY TO WILL CONTEST, ETC.

Failure to make the executor or administrator a party to an action brought to set aside a will, does not necessarily constitute a defect of parties.

2. PRESUMPTION THAT TESTATOR DESTROYED WILL WHEN SAME CANNOT BE FOUND AFTER DEATH, ETC.

Where a will once known to exist and to have been in the custody of the testator cannot be found after his death, the legal presumption is, that it was destroyed by him with the intention of revoking it; and to strengthen this presumption, it is competent to prove the declarations of the testator after making his will that he had destroyed, or intended to destroy it.

3. TESTATOR'S DECLARATIONS OF INTENTION INCOMPETENT IN WILL CONTEST.

While the declarations of the testator may be used to weaken the presumption that he has destroyed his will with the intention of revoking it, his declarations may also be used as evidence to strengthen and fortify the presumption that he has destroyed his will with such intention; and whether it be the making of a will, or the destroying of one, the competency of the testator's declarations as evidence is alike in each case, and for the same reason admissible.

4. ALLEGED WILL COMPETENT EVIDENCE WHEN CONTROLLING ISSUE IS FORGERY, ETC.

Where the controlling issue in a will contest is whether or not the alleged will is a forgery or genuine, any competent evidence tending to prove either fact is admissible, and should receive proper consideration by the jury; and to this end it is competent to introduce the disputed will in evidence for comparison with other written documents in evidence, proved to be genuine.

5. OTHER FORGED WILLS ADMISSIBLE TO SHOW PURPOSE OF GUILTY PARTIES, ETC.

On the trial of an issue in a will contest as to whether or not the will in dispute is a forgery, other forged wills and papers are competent evidence to show the evil purpose of the guilty parties.

6. WHERE EVIDENCE SHOWS WILL TO BE FORGERY, JUDGMENT NOT REVERSED FOR OTHER ERRORS.

Where the evidence in a will contest conclusively shows that the alleged will is a forgery, a verdict and judgment to that effect will not be set aside by a reviewing court for errors committed on the trial by the trial judge, or in charging the jury.

ERROR to Wayne common pleas court.

M. L. Smyser, N. W. Wolf and W. S. Kerr, for plaintiffs in error.

McCray & McCray, F. W. Patterson and H. A. Mykrantz, for defendants in error.

## McCARTY, J.

On November 4, 1902, the defendants in error, who were then plaintiffs, began an action against the plaintiffs in error, who were then de-

fendants, to contest the validity of a certain paper writing, which purported to be the last will and testament of "S. Glass," deceased.

The action was brought and an issue was made up under the statute as to whether the so-called paper writing which purported to be the last will and testament of S. Glass, deceased, was his valid last will and testament.

It was averred in plaintiff's petition below that said paper writing is not the last will and testament of the said Samuel Glass, but that said purported will is false, forged and fraudulent; that the first purported witness on said paper writing, viz.: D. B. F. Jones, is a fictitious person or his name is a forgery; that the names of the second and third purported witnesses to said paper writing, viz., John P. Jefferies and S. R. Bonewitz, both of whom are now deceased, are false, forged and fraudulent and were not written by said Jefferies or Bonewitz, and that all of the writing in said purported will, including the signatures together with all other signatures and indorsements thereon, is a forgery, and plaintiffs prayed that an issue may be made up as to whether said paper writing is the last will and testament of the said Samuel Glass, and that the same may be set aside and held for naught.

An issue was made up under the statutes as to whether said paper writing is the last will and testament of Samuel Glass; and it was ordered by the court that it be ascertained by the verdict of the jury whether said writing is the last will and testament of the said Samuel Glass or not.

The case was tried to a jury in Wayne county, it having been originally commenced in the Ashland common pleas court and on a change of venue transferred to Wayne county and there tried to a jury, who returned a verdict at the January, 1904, term, to wit: on March 8, determining that the paper writing purporting to be the last will and testament of Samuel Glass, deceased, is not the last will and testament of Samuel Glass, deceased.

And thereupon a motion for a new trial was filed, and on hearing was overruled, to which the defendants duly excepted, and a judgment in accordance with said verdict was duly rendered by the court adjudging that the paper writing produced in this case and purporting to be the last will and testament of the said Samuel Glass was not the last valid will and testament of the said Samuel Glass, deceased; to all of which findings and judgments the said defendants excepted. And thereupon a petition in error was duly filed asking this court to reverse the judgment on the alleged errors:

(1)  The court erred in overruling the motion for new trial.

Gurley v. Armentraut.

(2) The court erred in its charge to the jury.

(3) The court erred in refusing to charge as requested by defendants.

(4) The court erred in admitting evidence objected to by the defendants, as shown by the bill of exceptions.

(5) The court erred in rejecting evidence offered by the defendants.

(6) The court erred in other matters.

(7) The judgment was against the weight of the law and the weight of the evidence.

(8) The judgment should have been given for defendants instead of for plaintiffs.

I will endeavor to dispose of these several alleged errors as they are presented in argument.

It is claimed by counsel for plaintiffs in error that there is a defect of parties in this, that no executor or administrator of the estate of Samuel Glass, deceased, has been made a party to this suit, which it is claimed the statute requires.

Laning R. L. 9395 (R. S. 5859) reads as follows:

"All the devisees, legatees, and heirs of the testator, and other interested persons, including the executor or administrator, must be made parties to the action."

It will be remembered that Dr. Samuel Glass died on February 26, 1873, more than thirty-one years ago; and it is shown by the evidence in the case that at the commencement of this action there was no personal property of any kind, and no debts, so that under Lan. R. L. 9557 (R. S. 6018) there could be no administrator with the will annexed, for the very simple reason that there would be nothing for him to act upon, so that his appointment as such administrator would be a vain and useless ceremony.

In *Andrews* v. *Administrators*, 7 Ohio St. 143, it is decided that an executor is not bound to assume the burden of the defense of a contest of the will by the heirs at law, but may properly throw the same on the legatees or devisees. The executor is not entitled when the will is adjudged invalid to charge the estate in his settlement account with the expense of maintaining such defense.

In most of the cases reported, where the executor is given the power of sale of the land of the decedent the courts almost uniformly hold that the executor, in case he sees fit to exercise this power, holds the fee in the land. No such power is given in the purported will in this case.

And besides the petition in this case, and the evidence, show that

all the heirs at law and devisees and legatees of Samuel Glass, deceased, are made parties.

The plaintiff in the case below, Wade Armentraut, was not an heir, legatee or devisee, either at law or under the purported will, and he would have no power to secure the appointment of an administrator with the will annexed. So that the making of the executor or administrator a party would be useless.

We are therefore of the opinion that there was no defect of parties, or at least not such a defect as would be prejudicial to plaintiffs in error.

It is also claimed that the court erred in admitting in evidence the alleged declarations of Dr. Glass as to his intention to make a will, or that he had not made a will.

When a will once known to exist and to have been in the custody of the testator cannot be found after his decease, the legal presumption is, that it was destroyed by the testator with the intention of revoking it.

To strengthen such presumption it is competent to prove the declarations of the testator after making his will, that he has destroyed, or intended to destroy, the same.

But while the declarations of the testator may be used to weaken presumption that he has destroyed his will with the intention of revoking it, his declarations may also be received as evidence to strengthen and fortify the presumption that he has destroyed his will with such intention, whether it be the making of a will or the destroying of one, the competency of the testator's declarations as evidence is alike in each case and for the same reason admissible. *Collagan* v. *Burnes*, 57 Me. 449, 465.

No claim is made that a will may be revoked by the mere declaration of the testator, or otherwise than by the modes prescribed by the statute, but a legal presumption is raised upon the decease of the testator that he destroyed his last will and testament in the statutory mode with the intention of revoking it. It is obvious that while the declarations of the testator may be admitted as evidence towards rebutting the presumption of such destruction and revocation before the death, they may with equally good reason be received as evidence to support and strengthen that presumption. *Behrens* v. *Behrens*, 47 Ohio St. 323, 332, 334 [25 N. E. Rep. 209; 21 Am. St. Rep. 820].

The strongly expressed conclusions in *Reel* v. *Reel*, 1 Hawks (N. C.) 248, is in accord with the citations already made. The court say in that case: "To reject the declarations of the only person having a vested interest and who was interested to declare the truth whose *fiat*

gave existence to the will, and whose *fiat* could destroy, and in doing the one or the other could interfere with the rights of no one, involves almost an absurdity; and they are received, not upon the ground of their being a part of the *res gesta*, for whether they accompany an act or not, whether made long before or long after making the will, is entirely immaterial as to their competency. Those circumstances only go to show their weight or credit with the tribunal which is to try the fact." This is quoted with approval in *Behrens* v. *Behrens, supra*, page 334.

In 1 Elliot, Evidence Sec. 533, it is said:

"The rule as to declarations of intention by a testator has been stated as follows: The declarations of a deceased testator as to his testamentary intention and as to the contents of his will are deemed to be relevant when his will has been lost, when there is a question as to what were its contents, and where the question is, whether an existing will is genuine or was improperly obtained, and the question is, whether any and which, of more existing documents than one, constitutes his will.

"In all these cases it is immaterial whether the declarations were made before or after the making or loss of the will. The rule might have been properly extended to say that declarations of a testator are received to corroborate direct testimony as to a will alleged to be a forgery, or to have been executed under undue influence or force. The court we think properly admitted the evidence of the alleged declarations of Dr. Glass showing his intentions as to the making of a will.

"It is also contended on the part of the plaintiffs in error that the court erred in permitting the papers purporting to be the wills of Dr. Glass and the letters and envelopes which appear in the bill of exceptions. It is not to be forgotten that the controlling issue to be determined by the jury was whether the alleged will is a forgery or whether it is genuine. Upon the trial of that issue any competent evidence tending to prove the forgery or genuineness of the instrument in contest is not the valid will of the testator is admissible and should receive proper consideration by the jury.

"As bearing upon this question 'it was also held to be competent for the jury to compare the handwriting of documents properly in evidence, and proved to have been written by the defendant, with the handwriting of the cards in dispute, for the purpose of ascertaining the origin of the cards.' *United States* v. *Chamberlain*, 12 Blatchf. 390 [25 Fed. Cas. 394].

"Comparison of a disputed handwriting with any writing proved

to the satisfaction of the judge to be genuine is permitted to be made witnesses, and such writing, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise of the writing in dispute. This paragraph applies to all courts of judicature, criminal or civil, and to all persons having by law or the consent of parties authority to hear, receive and examine evidence. Stephens, Digest of Evidence Art. 52, page 220.

"Writings not relevant to the cause may be received irrespective of the rules as to the standards of comparison when offered not for the purpose of comparing handwriting as such but for the purpose of showing identical or dissimilar usages of languages, such as characteristic mistakes in spelling.

"On the trial of a person accused of uttering and publishing a forged deed for the conveyance of real estate with intent to defraud, other forged deeds for the conveyance of real estate, including deeds of trust made to a trustee, to secure the payment of promissory notes or bonds found in his possession or proved to have been uttered and published by him are competent testimony to show the guilty knowledge of the accused. *Lindsey* v. *State,* 38 Ohio St. 507, third syllabus."

But what is there aside from all this to show that this purported will is not the genuine will of Dr. Glass?

Cloyd Mansfield, probate judge, Ashland, says the will is not genuine.

Joseph Patterson says it is not his handwriting.

A. G. Beer, postmaster for fourteen years, knew his handwriting well, and says the will is not genuine.

P. T. Crowell, D. P. McDonald, S. L. Arnold, Levi F. Bandie, expert, Thomas F. Hunter, William Franks, C. C. Adams, L. R. Kramer, W. H. Sampsell, George J. Knight, J. J. Sanborn, Ross W. Funck, prosecuting attorney, H. A. Mykrantz, and an almost innumerable number of other witnesses taken from all the various walks of life, bank cashiers, merchants, clerks, lawyers, postmasters, and men who often saw Dr. Glass write, sign his name and whose signature was as familiar to them as his countenance was, and there was as little likelihood of their being mistaken as to his signature or his walk, these witnesses, many of them, have testified as fully intelligently and with as much apparent familiarity as to the signatures of John P. Jeffries and S. R. Bonewitz, two of the alleged witnesses to the will. The other alleged witness to the will, D. B. F. Jones, has not been found, and that fact alone stamps the alleged will with suspicion as to its genuineness. These witnesses, who testify on that side, all testify with apparent clearness, that in their

Gurley v. Armentraut.

opinion the whole will and signatures of the witnesses to the will are all forged.

This purported will seems to have been written at Wooster, Ohio, on October 30, 1869, a time within the memory of the most of us; and to find none of the named witnesses to the will, nor any persons who ever knew or heard of him, and no trace of him or his whereabouts, is more than I can reconcile with the genuineness of the will, and there seems to be no way of reconciling the matter other than on the belief that it is all forged and untrue. These facts and circumstances all fit in and are reconcilable on the theory of forgery and upon no other possible theory can they be reconciled. True a great many witnesses have testified on the other side who are intelligent and honest persons and have given their opinion that the purported will and signatures are genuine. But we think the great weight of the testimony and circumstances when placed in the balance leaves but little room to contend in favor of the validity of the will. There is not a fact nor circumstance connected with the paper, its production in court where it was written, where it was sent to, to whom it was sent, and how the whole scheme worked that is reconcilable with the genuineness, and it is not only false, forged and counterfeited but the whole will, all names of the alleged witnesses are forged, and the whole of it is a part of the grand scheme, and shows a persistent and determined effort on the part of some one to provide a last will and testament for Dr. Samuel Glass.

From 1873, when Dr. Glass died, until 1897, when Mrs. Glass died, she treated all this property as her own and sold portions of it, and no question of her right to do so is ever raised, although if this purported will is to prevail the rights of innocent third parties would be jeopardized and they left without remedy. And within a few weeks after her death the wills came to parties in Ashland from unknown sources, also alleged promissory notes purporting to have been signed by Dr. Glass as surety for various parties. Another striking coincidence is the fact, that all of the witnesses are dead, unless it be D. B. F. Jones, and he probably was never born—is a myth.

Dr. Glass died about March 1, 1873, his estate was administered upon in the usual way, and his widow became possessed of all property left by him as his sole heir under the law. The custodians of the paper purporting to be the will turned up after the death of the widow, which occurred more than twenty-five years after the death of Dr. Glass. John P. Jeffries died August 13, 1888; S. R. Bonewitz died in May, 1898 and the other purported witness, D. B. F. Jones, not found

Wayne County.

The custodians of this purported will all lived during the time of Dr. Glass's estate was being settled up, and it was not settled under a bushel or behind a barn secretly, but was settled in the usual ordinary way. Alexander Nelson acted as administrator in the settlement of his estate and must have known what was going on. It could hardly have been otherwise.

Isaac Stull who seems to have had the custody of this will did not leave Ashland for California until 1888, and neither before nor after he left California did he intimate to any person that he had the will, not even to members of his own family, and he lived in Ashland during the time that Alexander Nelson settled up the estate.

It is claimed that the court erred in its charge to the jury as follows:

"It is claimed by the plaintiffs,—by plaintiffs I mean to include such defendants as well as the plaintiffs who are against the will—and denied by the defendants—and by the defendants I mean such of the defendants as favor the will—that the alleged will in controversy was one of a number of purported wills in evidence, all forged in pursuance of a design by the person forging the same to cheat and defraud the rightful owners of the estate described in the alleged will in controversy, out of the estate or a large portion of it, and that the other writings in evidence were simulated and forged by him for the same purpose, and that all of these purported wills and writings, including the one in controversy, are in the same handwriting, by the same person, and that back of the purported wills and other written instruments was a general plan or scheme to defraud the rightful owners of the estate, and that the design or plan is evidenced by these purported wills and writings and circumstances developed in the testimony, and that they are so connected as to indicate a common purpose including in its scope the fraudulent purposes I have described.

"The fact of forgery of a particular paper cannot be shown by proof of other acts of the same kind, and these alleged wills and writings claimed to be forged were not admitted in evidence, and cannot be considered to prove that the alleged will is forged or genuine. But if you find that such person did forge the purported wills and other writings you can consider them with other circumstances developed in the testimony bearing on the question to show that at the time of the execution of the alleged will in controversy such person had fraudulent design you can consider that he had such design in determining whether the alleged will in controversy is genuine or forged by such person, but for that purpose you can only consider such of said reputed wills and

Gurley v. Armentraut.

instruments as you find forged by such person and forged within a reasonable time to that at which the alleged will in controversy was executed to show the plan of such person at that time.''

I cannot answer this objection to the charge better than by quoting what is said in *Lindsey* v. *State,* 38 Ohio St. 507, where it is said:

"On the trial of a person accused of uttering and publishing a forged deed for the conveyance of real estate with intent to defraud, other forged deeds for the conveyance of real estate, including deeds of trust, made to a trustee to secure the payment of promissory notes or bonds, found in his possession, or proved to have been uttered and published by him, are competent testimony to show the guilty knowledge of the accused.''

We think the court properly instructed the jury and that there is no room for complaint on that ground.

If we are right in our conclusion as to the fact of this being a forgery,—in other words, if it is a forgery,—no matter what the court said to the jury as to how they should consider certain branches of the testimony, or what their finding should be, the fact remains that the will is forged, fictitious and a counterfeit, and no charge of a court or finding of a jury would change the fact or instill new life into that already dead. It is not like that, that had some sparks of vitality in it that might be revivified, but if our conclusion is right it is false *in toto*.

Take all of this evidence from the beginning to the end and all of these remarkable circumstances and coincidences—the fact that all of the principal active and merely passive participants in this grand scheme are all dead; the will comes to light after they have all closed their eyes in death; no one is left to tell the story although those are living if there ever was a genuine will, who could have told the story and who naturally would have told the whole truth. One of these, or both alleged witnesses lived during the time the estate of Dr. Glass was being settled, and for many years thereafter. They were on the will and within reach, and the most natural thing in the world for them to do would have been to tell it and yet no syllable escapes their lips about it.

This conduct is too unnatural to be true. It is not true. The jury made no mistake, and no matter if any error has crept into the record, if the main issue—viz.: Was the paper writing a forgery?—has been properly determined, and we think it was.

But suppose we are wrong on some of those and still right on the main issue as to whether it is a forgery, the alleged error must be prejudicial error.

Wayne County.

Laning R. L. 8630 (R. S. 5115) reads as follows:

"The court, in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed, or affected, by reason of such error or defect."

There must be prejudicial error to authorize the reversal of a judgment. When from the whole record it appears conclusively that the proper judgment was entered, the proceeding will not be reversed on error if the court mistook the law on some of the propositions discussed during the trial.

In order to justify the reversal of a judgment on error the record must affirmatively show not only that error intervened but that it was to the prejudice of the party asking to take advantage of it.

It is also settled that a judgment will not be reversed for erroneous instruction where it clearly appears from the whole record that it did not prejudice the rights of the party objecting thereto. Where upon the whole record it is apparent that on a retrial no recovery can be had a judgment in favor of defendant will not be reversed merely because the court below may have erred in their instructions to the jury.

Finding no error in the record prejudicial to the plaintiffs in error the judgment of the common pleas court will be affirmed, without penalty, at the costs of the plaintiff in error.

Plaintiffs in error except. See entry.

**Voorhees** and **Donahue, JJ.,** concur.